# UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GERALD JOSEPH LOVOI, derivatively on behalf of Nominal Defendant GENERAL MOTORS COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | |
| MARY T. BARRA, ANEEL BHUSRI, WESLEY G. BUSH, JOANNE C. CREVOISERAT, LINDA R. GOODEN, JOSEPH JIMENEZ, JONATHAN MCNEILL, JUDITH A. MISCIK, PATRICIA F. RUSSO, THOMAS M. SCHOEWE, MARK A. TATUM, JAN E. TIGHE, and DEVIN N. WENIG, | ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants, | ) ) | |
| -and- | ) ) | |
| GENERAL MOTORS COMPANY, a Delaware Corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

## <u>VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT</u>

Plaintiff Gerald Joseph Lovoi ("Plaintiff"), derivatively on behalf of General Motors Company ("GM" or the "Company"), brings the following Stockholder Derivative Complaint (the "Complaint") against the Company's board of directors (the "Board") and executive officers for breaches of fiduciary duties and violation of Section 14(a) of the Securities Exchange Act of 1934. Except for allegations specifically pertaining to Plaintiff and Plaintiff's own acts, the allegations in the Complaint are based upon information and belief, which include but are not limited to: (i) the Company's public filings with the United States Securities and Exchange Commission (the "SEC"); (ii) pleadings filed in *In re: ARC Airbag Inflators Products Liability Litigation*, 1:22-cv-

03051-ELR (N.D.Ga.); (iii) corporate governance documents available on the Company's website; and (iv) other publicly available information.

## NATURE OF THE ACTION

1.      This is a stockholder derivative action brought by Plaintiff, a stockholder of GM, on behalf of the Company against the Defendants.  This action alleges breaches of fiduciary duty by the Board and senior executive officers occurring from at least February 2022 through October 2023.  During that time, the Defendants (as defined herein) caused or allowed GM to issue or make materially false and misleading statements concerning the Company's financial condition and business operations.  Additionally, the Defendants caused or allowed GM to file false and misleading statements with the SEC.

2.      In 2015, the National Highway Traffic Safety Administration ("NHTSA") began investigating air bag inflators manufactured by ARC Automotive, Inc. ("ARC").  The investigation was sparked by the explosion of airbags in two separate crashes.  The NHTSA found that both airbag inflators were manufactured by ARC.  During the course of its investigation, the NHTSA found that ARC's airbag inflators can explode when the airbag is deployed, essentially causing shrapnel to blast through the vehicle.  At least two people were killed by the shrapnel propelled by an ARC airbag inflator exploding.

3.      By 2022, the NHTSA had been investigating ARC's airbag inflators for seven years.  The NHTSA had contacted GM at least twice in that time about the airbag inflators, and GM had recalled almost 1,700 vehicles that contained ARC airbag inflators.  As the NHTSA ramped up its investigation, GM stayed silent.  Even as the NHTSA called for ARC and vehicle manufacturers, including GM, to recall tens of millions of vehicles for defective airbag inflators, GM downplayed the seriousness of the issue.  In October 2023, the Wall Street Journal reported

that at least 20 million vehicles sold by GM had defective airbag inflators installed.

4.      In addition to a product liability lawsuit, GM faces a class action lawsuit alleging violations of federal securities laws for making false and misleading statements about the Company's ability to address defects with airbag inflators and the safety concerns related to defective airbag inflators.

5.      Through this action, Plaintiff seeks to hold the Board and executive officers accountable for making or causing the Company to make false and misleading statements in breach of their fiduciary duties to the Company.

**PARTIES**

**A.   Plaintiff**

6.      Plaintiff Gerald Joseph Lovoi is a current stockholder of GM and has continuously held GM stock during all times relevant hereto and is committed to retaining GM shares through the pendency of this action to preserve his standing.  Plaintiff will adequately and fairly represent the interests of GM and its stockholders in enforcing its rights.

**B.   Nominal Defendant**

7.      Nominal Defendant GM is a corporation organized and existing under the laws of the State of Delaware.  The Company's principal executive offices are located at 300 Renaissance Center, Detroit, Michigan 48265-3000.

**C.   Individual Defendants**

8.      Defendant Mary T. Barra has served as CEO and a director of the Company since 2014.

9.      Defendant Aneel Bhusri has been a director of the Company since 2021.

10.      Defendant Wesley G. Bush has been a director of the Company since 2019.

11.      Defendant Joanne C. Crevoiserat has been a director of the Company since 2022.

12.     Defendant Linda R. Gooden has been a director of the Company since 2015.

13.     Defendant Joseph Jimenez has been a director of the Company since 2015.

14.     Defendant Jonathan McNeill has been a director of the Company since 2022.

15.     Defendant Judith A. Miscik has been a director of the Company since 2018.

16.     Defendant Patricia F. Russo has been a director of the Company since 2009.

17.     Defendant Thomas M. Schoewe has been a director of the Company since 2011.

18.     Defendant Mark A. Tatum has been a director of the Company since 2021.

19.     Defendant Jan E. Tighe has been a director of the Company since 2023.

20.     Defendant Devin N. Wenig has been a director of the Company since 2018.

21.     Defendants Barra, Bhusri, Bush, Crevoiserat, Gooden, Jimenez, McNeill, Miscik, Russo, Schoewe, Tatum, Tighe, and Wenig are herein referred to as "Director Defendants."

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act.

23.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

24.     This court has jurisdiction over each defendant named herein because each Defendant is either a corporation that conducts business in and maintains operations in Delaware or is an individual who has sufficient minimum contacts with Delaware so as to render the exercise of jurisdiction by the Delaware courts permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this court pursuant to 28 U.S.C. § 1391 because the Company is incorporated in Delaware, and conducts regular, sustained business activity in this District.  Also,

Defendants' actions have had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.   Company Background

26.    GM designs, builds, and sells automobiles throughout the world.  Since 2016, GM has sold over 21.5 million vehicles in the United States under the Buick, Cadillac, Chevrolet, and GMC brands.  For almost that entire time, the airbag inflators used in airbags in GM vehicles have been under investigation by the NHTSA.

27.    GM was aware of the dangers of the ARC airbag inflators it installed in the vehicles it sold.  The NHTSA opened its investigation into ARC airbag inflators in 2015.  In 2016, the NHTSA expanded its investigation to include airbag inflators in GM vehicles.  After a September 2017 crash where an ARC airbag inflator exploded, GM recalled 1,145 vehicles.  In 2020, the NHTSA requested information from GM about the airbag inflators installed in its vehicles.  Then, GM recalled 552 vehicles in October 2021, two months after a crash where an exploding ARC airbag inflator killed the driver.

### B.   GM's False and Misleading Statements

28.    GM filed its Form 10-K for the 2021 fiscal year on February 2, 2022 (the "2021 10-K").  Defendant Barra signed the certifications required under the Sarbanes-Oxley Act of 2002 ("Sarbox"), which averred that the 2021 Form 10-K complied with the Securities Exchange Act and did not make any false or misleading statements or omissions.

29.    According to the 2021 Form 10-K:

In November 2020, the NHTSA directed that we replace the airbag inflators in our GMT900 vehicles, which are full-size pickup trucks and SUVs, and we decided not to contest NHTSA's decision.  While we have already begun the process of executing the recall, given the number of vehicles in this population, the recall will take several years to be completed.  Accordingly, in the year ended December 31, 2020, we recorded a warranty accrual of $1.1 billion for the expected costs of

complying with the recall remedy, and we believe the currently accrued amount remains reasonable.

GM has recalled certain vehicles sold outside of the U.S. to replace Takata Corporation (Takata) inflators in those vehicles.  There are significant differences in vehicle and inflator design between the relevant vehicles sold internationally and those sold in the U.S.  We continue to gather and analyze evidence about these inflators and to share our findings with regulators.  Any additional recalls relating to these inflators could be material to our results of operations and cash flows.

The 2021 Form 10-K did not include any information about the NHTSA's investigation into the ARC airbag inflators, nor about safety issues connected with ARC airbag inflators.

30.    On April 27, 2022, GM filed a Form 10-Q with the SEC. Defendant Barra signed the Sarbox certifications that averred that the Form 10-Q complied with the Securities Exchange Act and did not make any false or misleading statements or omissions.  This filing contained substantively the same statements as those made in the 2021 Form 10-K concerning airbag inflator safety concerns.

31.    The April 2022 Form 10-Q did not include any information about the NHTSA's investigation into the ARC airbag inflators, nor about safety issues connected with ARC airbag inflators.  Yet on April 14, 2022, GM recalled 2,687 vehicles in response to an October 2021 crash involving an exploding airbag inflator.

32.    On July 26, 2022, GM filed a Form 10-Q with the SEC. Defendant Barra signed the Sarbox certifications that averred that the Form 10-Q complied with the Securities Exchange Act and did not make any false or misleading statements or omissions.  This filing contained substantively the same statements as those made in the 2021 Form 10-K and the April 2022 Form 10-Q concerning airbag inflator safety concerns.

33.    The July 2022 Form 10-Q did not include any information about the NHTSA's investigation into the ARC airbag inflators, nor about safety issues connected with ARC airbag

inflators.

34.     On October 25, 2022, GM filed a Form 10-Q with the SEC. Defendant Barra signed the Sarbox certifications that averred that the Form 10-Q complied with the Securities Exchange Act and did not make any false or misleading statements or omissions.  This filing contained substantively the same statements as those made in the 2021 Form 10-K, the April 2022 Form 10-Q, and the July 2022 Form 10-Q concerning airbag inflator safety concerns.

35.     The October 2022 Form 10-Q did not include any information about the NHTSA's investigation into the ARC airbag inflators, nor about safety issues connected with ARC airbag inflators.  Yet on August 31, 2022, the NHTSA called a meeting with ARC and GM and other relevant parties, where the NHTSA went over its investigation and indicated it would seek more information about the ARC airbag inflators.

36.     On January 31, 2023, GM filed a Form 10-K for the 2022 fiscal year (the "2022 10-K") with the SEC. Defendant Barra signed the Sarbox certifications that averred that the 2022 Form 10-K complied with the Securities Exchange Act and did not make any false or misleading statements or omissions.  This filing contained substantively the same statements as those made in the 2021 Form 10-K, the April 2022 Form 10-Q, the July 2022 Form 10-Q, and the October 2022 Form 10-Q concerning airbag inflator safety concerns.

37.     The 2022 Form 10-K did not include any information about the NHTSA's investigation into the ARC airbag inflators, nor about safety issues connected with ARC airbag inflators.

38.     On April 25, 2023, GM filed a Form 10-Q with the SEC. Defendant Barra signed the Sarbox certifications that averred that the Form 10-Q complied with the Securities Exchange Act and did not make any false or misleading statements or omissions.  This filing contained

substantively the same statements as those made in the 2021 Form 10-K, the April 2022 Form 10-Q, the July 2022 Form 10-Q, the October 2022 Form 10-Q, and the 2022 Form 10-K concerning airbag inflator safety concerns.

39.     The April 2023 Form 10-Q did not include any information about the NHTSA's investigation into the ARC airbag inflators, nor about safety issues connected with ARC airbag inflators.

40.     On July 25, 2023, GM filed a Form 10-Q with the SEC. Defendant Barra signed the Sarbox certifications that averred that the Form 10-Q complied with the Securities Exchange Act and did not make any false or misleading statements or omissions.  This filing contained substantively the same statements as those made in the 2021 Form 10-K, the April 2022 Form 10-Q, the July 2022 Form 10-Q, the October 2022 Form 10-Q, the 2022 Form 10-K, and the April 2023 Form 10-Q concerning airbag inflator safety concerns.  However, the July 2023 Form 10-Q did include information about ARC airbag inflators:

> **ARC Matters** in May 2023, we initiated a voluntary recall covering nearly one million 2014-2017 model year Buick Enclave, Chevrolet Traverse, and GMC Acadia SUVs equipped with driver front airbag inflators manufactured by ARC Automotive, Inc. (ARC), and accrued an immaterial amount for the expected costs of the recall.  As part of its ongoing investigation into ARC airbag inflators, NHTSA has issued a recall request letter to ARC, in which the agency (a) tentatively concluded that a defect related to motor vehicle safety exists in 67 million frontal driver and passenger air bag inflators manufactured by ARC and supplied to a number of automakers, including GM, and (b) demanded that ARC issue a recall notice for these inflators. ARC has disputed the recall request, asserting that no identified defect trend exists in the inflators and that any problems are related to isolated manufacturing issues.  Depending on the outcome of the dispute between NHTSA and ARC, and the possibility of additional recalls, the cost of which may not be fully recoverable, it is reasonably possible that the costs associated with these matters in excess of amounts accrued could be material, but we are unable to provide an estimate of the amounts or range of reasonably possible material loss at this time.
>
> There are several putative class actions that have been filed against GM, including in the U.S., Canada, and Israel, arising out of allegations that airbag inflators

manufactured by ARC are defective.  At this stage of these proceedings, we are unable to provide an estimate of the amounts or range of reasonably possible material loss.

41.     What the July 2023 Form 10-Q does not disclose is that the NHTSA met with GM on April 25, 2023, to inspect a 2017 Chevrolet Traverse whose driver airbag inflator burst during a crash.  Two days later, the NHTSA issued its demand to ARC to recall 67 million airbag inflators.  The July 2023 Form 10-Q does not disclose that the NHTSA found the ARC airbag inflators to have a design flaw that posed an unreasonable risk of death or injury.

### C.     The Truth Emerges

42.     On September 5, 2023, the NHTSA issued its initial decision in its investigation of ARC airbag inflators.  The NHTSA's initial decision covered ARC airbag inflators manufactured through January 2018, noting that said airbag inflators contained a defect that posed "an unreasonable risk of serious injury or death to vehicle occupants." In total, the NHTSA called for the recall of 41 million airbag inflators manufactured by ARC.  The issuance of the initial decision is the first formal step before the NHTSA can force a recall of the airbag inflators.

43.     The NHTSA held a public hearing concerning its initial decision on ARC airbag inflators on October 5, 2023.   At that hearing, an NHTSA enforcement official stated that "evidence shows without a recall more people will be injured or killed." News reports indicate that there are at least 20 million GM vehicles that would be subject to a mandatory recall.

44.     GM filed a Form 10-Q with the SEC on October 24, 2023.  According to the Form 10-Q:

> **ARC Matters** In May 2023, we initiated a voluntary recall covering nearly one million 2014-2017 model year Buick Enclave, Chevrolet Traverse and GMC Acadia SUVs equipped with driver front airbag inflators manufactured by ARC Automotive, Inc. (ARC), and accrued an insignificant amount for the expected costs of the recall.  As part of its ongoing investigation into ARC airbag inflators, on September 5, 2023, NHTSA issued an initial decision that approximately

52 million frontal driver and passenger airbag inflators manufactured by ARC and Delphi Automotive Systems LLC over a roughly 20-year period contain a safety-related defect and must be recalled. NHTSA's initial decision is based on the occurrence of seven field ruptures involving ARC-manufactured frontal airbag inflators. We are continuing to investigate the cause of the ruptures in GM vehicles in connection with our existing recalls. We expect NHTSA to issue its final decision sometime after the administrative record for NHTSA's investigation closes on December 4, 2023. We do not believe further GM vehicle recalls are necessary or appropriate at this time and we expect to submit appropriate comments to NHTSA to explain this position before the close of the administrative record. However, depending on the outcome of the dispute between NHTSA and ARC, and the possibility of additional recalls, the cost of which may not be fully recoverable, it is reasonably possible that the costs associated with these matters in excess of amounts accrued could be material, but we are unable to provide an estimate of the amounts or range of reasonably possible material loss at this time.

There are several putative class actions that have been filed against GM, including in the U.S., Canada and Israel, arising out of allegations that airbag inflators manufactured by ARC are defective. At this stage of these proceedings, we are unable to provide an estimate of the amounts or range of reasonably possible material loss.

**D.      Harm to the Company**

45.      GM's issuance of false and misleading statements has harmed, and will continue to harm, the Company. This includes the fees and costs associated with prosecuting and resolving the product liability case and the securities class action, as well as the costs of recalling vehicles with the defective ARC airbag inflators.

46.      GM has suffered and will continue to suffer a loss of reputation and goodwill for the issued false and misleading statements.

**E.      GM Issued False and Misleading Proxy Statements**

47.      In addition to the false and misleading statements discussed above, the Defendants also caused the Company to issue false and misleading proxy statements during the Relevant Period. The Schedule 14A Proxy Statement issued on April 29, 2022 (the "2022 Proxy") and the Schedule 14A Proxy Statement issued on April 28, 2023 (the "2023 Proxy") sought stockholder

votes to, among other things, re-elect the Defendants to serve on the Board.

48.     Defendants Barra, Bhusri, Bush, Gooden, Jimenez, Miscik, Russo, Schoewe, Tatum, and Wenig drafted, approved, reviewed, and/or signed the 2022 Proxy before it was filed with the SEC and disseminated to GM's stockholders.  Defendants Barra, Bhusri, Bush, Gooden, Jimenez, Miscik, Russo, Schoewe, Tatum, and Wenig negligently issued materially misleading statements in the 2022 Proxy.  These allegations are based solely on negligence, they are not based on any allegations of recklessness or knowing conduct by or on behalf of Defendants Barra, Bhusri, Bush, Gooden, Jimenez, Miscik, Russo, Schoewe, Tatum, and Wenig, and they do not allege or do not sound in fraud.  Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference or any allegation of fraud, scienter, or recklessness with regard to the 2022 Proxy allegations and related claims.

49.     In support of re-electing themselves, Defendants Barra, Bhusri, Bush, Gooden, Jimenez, Miscik, Russo, Schoewe, Tatum, and Wenig highlighted their supposed oversight of the Company.  The 2022 Proxy Statement stated:

> The Board has overall responsibility for risk oversight and focuses on the most significant risks facing the Company.  The Board discharges its risk oversight responsibilities, in part, through delegation to its Committees.  The Company's risk governance is facilitated through a top-down and bottom-up communication structure, with the tone established at the top by Ms. Barra, our Board Chair and CEO, who is also our Chief Risk Officer, and other members of management, specifically the Senior Leadership Team.
>
> *          *          *
>
> **Audit Committee:** Oversees risks related to (i) financial reporting, internal disclosure controls (including with respect to ESG issues), and auditing matters; and (ii) legal, regulatory, and compliance programs.

50.     The 2022 Proxy thus assured stockholders that Defendants Barra, Bhusri, Bush, Gooden, Jimenez, Miscik, Russo, Schoewe, Tatum, and Wenig understood Company-wide

risks, actively oversaw the Company's risks and exposures and steps taken to monitor and mitigate risk exposures.  In reality, Defendants Barra, Bhusri, Bush, Gooden, Jimenez, Miscik, Russo, Schoewe, Tatum, and Wenig were utterly failing in their oversight duties by allowing the Company to operate with inadequate internal controls which resulted in the failure to disclose or prevent the Defendants from causing the Company to make materially false and misleading statements concerning the defective ARC airbag inflators.

51.     As a result of these misleading statements, the Company's stockholders voted via an uninformed stockholder vote to re-elect the Director Defendants to the Board.

52.     Defendants drafted, approved, reviewed, and/or signed the 2023 Proxy before it was filed with the SEC and disseminated to GM's stockholders.  Defendants negligently issued materially misleading statements in the 2023 Proxy.  These allegations are based solely on negligence, they are not based on any allegations of recklessness or knowing conduct by or on behalf of Defendants and they do not allege or do not sound in fraud.  Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference or any allegation of fraud, scienter, or recklessness with regard to the 2023 Proxy allegations and related claims.

53.     In support of re-electing themselves, the Defendants highlighted their supposed oversight of the Company.  The 2023 Proxy Statement stated:

> The Board has overall responsibility for risk oversight and focuses on the most significant risks facing the Company.  The Board discharges its risk oversight responsibilities, in part, through delegation to its Committees. The Company's risk governance is facilitated through a top-down and bottom-up communication structure, with the tone established at the top by Ms. Barra, our Board Chair and CEO, who is also our Chief Risk Officer, and other members of management, specifically the Senior Leadership Team.
>
> *     *     *
>
> **Audit Committee:** Oversees risks related to (i) financial reporting, internal disclosure controls (including with respect to ESG issues, reporting, and

disclosures), and auditing matters; and (ii) legal, regulatory, and compliance programs.

54.     The 2023 Proxy thus assured stockholders that Defendants understood Company-wide risks, actively oversaw the Company's risks and exposures and steps taken to monitor and mitigate risk exposures.  In reality, Defendants were utterly failing in their oversight duties by allowing the Company to operate with inadequate internal controls which resulted in the failure to disclose or prevent the Defendants from causing the Company to make materially false and misleading statements concerning defective ARC airbag inflators.

55.     As a result of these misleading statements, the Company's stockholders voted via an uninformed stockholder vote to re-elect the Director Defendants to the Board.

## FIDUCIARY DUTIES OF THE DIRECTOR DEFENDANTS

56.     As officers and/or directors of GM, the Defendants owed GM fiduciary duties of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage GM in a fair, just, honest and equitable manner.  The conduct of the Director Defendants involves a knowing or reckless violation of their obligations as directors and officers of GM, the absence of good faith on their part, and a reckless disregard for their duties to the Company that Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

57.     Defendants, because of their positions of control and authority as directors and/or officers of GM, were able to and did exercise control over the wrongful acts complained of herein. As officers and/or directors of a publicly traded company, the Defendants had a duty to prevent the dissemination of inaccurate and untruthful information regarding GM's financial condition, performance, growth, operations, financial statements, business, management, earnings, internal controls, and business prospects, so as to ensure that the market price of the Company's common

stock would be based upon truthful and accurate information.

58.     To discharge their duties, the officers and directors of GM were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors and GM were required to, among other things:

    a.     Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the Company's stockholders;

    b.     Conduct the affairs of the Company in a lawful, efficient, business-like manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

    c.     Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company;

    d.     Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

    e.     Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

    f.     Ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

59.     The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its stockholders, which the Defendants were aware, or should have been aware, posed a risk of serious injury to the

Company.

60.     GM maintains a Code of Conduct that applies to directors, officers and all other

employees of GM.  The Code of Conduct states:

> Everyone at GM has a personal responsibility for vehicle safety.  We
> are each expected to maintain the highest standards and to put the
> safety of our customers first – without exception.
>
> As a company, we strive to always produce safe vehicles for our
> customers and understand that to do so, we must maintain an active
> dialogue about safety.  Do your part by identifying, reporting, and
> escalating safety issues that you learn of or suspect so that we can
> strengthen our approach to vehicle safety.
>
> *               *               *
>
> We protect the integrity of our records.  Our company may face
> serious penalties or consequences if we don't keep accurate records
> of financial transactions and company information.  If you're
> responsible for preparing public financial disclosures, make sure
> that the information we report is clear, complete, and timely.

61.     The Board maintains its own Corporate Governance Guidelines.  According to the

Corporate Governance Guidelines:

> The Board oversees management's activities in connection with
> proper safeguarding of the assets of the Company, maintenance of
> appropriate financial and other internal controls, and compliance
> with applicable laws and regulations and proper governance.

62.      The Board's Audit Committee is tasked with assisting the Board in "oversight of

the quality and integrity of GM's financial statements, [and] GM's compliance with legal and

regulatory requirements." Specifically, according to the Audit Committee's charter, the Audit

Committee's responsibilities include:

> Discuss with management and the external auditors the annual
> audited financial statements and quarterly financial statements prior
> to filing.  This will include a discussion of Management's
> Discussion and Analysis of Financial Condition and Results of
> Operations and GM's earnings announcements, including the use of
> "pro forma" or "adjusted" non-GAAP information, as well as

> financial information and earnings guidance provided to analysts and rating agencies, and the results of the external auditors' reviews. These discussions may be general, covering the type of information to be disclosed and the presentation to be made, and need not take place in advance. The Committee may be represented by the Committee Chair or a subcommittee to review earnings announcements.

63.     In violation of the Audit Committee Charter, and their general duties as members of the Audit Committee, Defendants Schoewe, Bush, Crevoiserat, Gooden, and Tatum conducted little, if any, oversight of the Company's internal controls over financial reporting, resulting in materially false and misleading statements regarding the Company's business and consciously disregarded their duties to monitor such controls. The Audit Committee's complete failure to perform their duties in good faith resulted in misrepresentations to the public and the Company's stockholders.

64.     In addition, as officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act, the Defendants had a duty not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, so that the market price of the Company's common stock would be based upon truthful and accurate information. Accordingly, the Defendants breached their fiduciary duties by knowingly or recklessly causing the Company to make false and misleading statements of material fact about the Company's maintaining adequate internal controls and compliance with applicable rules and regulations.

65.     The Defendants' flagrant violations of their fiduciary duties and unwillingness to heed the requirements of their company's Code of Ethics and Audit Committee Charter have

inflicted, and will continue to inflict, significant harm on GM.

## DERIVATIVE ALLEGATIONS

66.     Plaintiff brings this action derivatively in the right and for the benefit of GM to redress injuries suffered by GM as a direct result of the Director Defendants' breaches of fiduciary duty.  GM is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

67.     Plaintiff will adequately and fairly represent the interests of GM in enforcing and prosecuting the Company's rights.

68.     Plaintiff was a stockholder of GM at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is currently a GM stockholder.

## DEMAND FUTILITY ALLEGATIONS

69.     Plaintiff repeats, re-alleges, and incorporates by reference each and every allegations set forth as though fully set forth herein.

70.     The GM Board currently has 13 members: Defendants Barra, Bhusri, Bush, Crevoiserat, Gooden, Jimenez, McNeill, Miscik, Russo, Schoewe, Tatum, Tighe, and Wenig.

71.     Plaintiff has not made any demand on GM'S current Board to institute this action against the Director Defendants, as any pre-suit demand would be excused.  The Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

### A.    Director Defendants Lack Independence Because They Face a Substantial Likelihood of Liability

72.     As alleged above, the Director Defendants breached their fiduciary duties by negligently issuing the materially false and misleading 2022 Proxy and 2023 Proxy soliciting the reelection of themselves to the Board.  Accordingly, they face a substantial likelihood of

negligence liability for issuing the 2022 Proxy and the 2023 Proxy and any demand upon these defendants is therefore futile.

73.     The Director Defendants face a substantial likelihood of liability for their individual misconduct.  As alleged above, the Director Defendants breached their fiduciary duties by allowing the Company to issue the materially false and misleading statements described above.   The Director Defendants had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

74.     In addition, the Director Defendants owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care.  Instead, the Director Defendants knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of GM.

75.     The Director Defendants' making or authorization of these false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence constitute breaches of fiduciary duties that have resulted in the Director Defendants facing a substantial likelihood of liability. If the Director Defendants were to bring a suit on behalf of GM

to recover damages sustained as a result of this misconduct, they would expose themselves and their colleagues to significant liability.  For this reason, demand is futile as to the Director Defendants.

### B.        Defendant Barra Lacks Independence Because of her Role as CEO

76.     Defendant Barra is CEO of the Company.  As CEO, Defendant Barra received a base salary of $2.1 million in 2022, as well as an additional $27.7 million in incentive awards.  As she is dependent on the Company and the Board for her income, Defendant Barra is not independent.  In addition, according to the 2023 Proxy, the Board affirmatively determined that Defendant Barra was not independent under applicable NYSE and SEC requirements.  Thus, demand is excused as to Defendant Barra.

### C.        Defendants Schoewe, Bush, Crevoiserat, Gooden, and Tatum are not Disinterested Because They Were Members of the Committee Responsible for Oversight of Financial Reporting

77.     The Audit Committee monitors and reviews the Company's financial reporting processes, disclosures, and internal controls.  One of the Audit Committee's responsibilities is to review the Company's annual audited financial statements, quarterly financial statements, and analyses or other written communications prepared by management in connection with the financial statements.  The Audit Committee was thus responsible for reviewing and approving GM's Forms 10-Q and 10-K filed between February 2022 and October 2023.  Defendants Schoewe, Bush, Crevoiserat, Gooden, and Tatum were members of the Audit Committee during the relevant time period and were thus responsible for knowingly or recklessly allowing the improper statements related to the Company's earnings guidance and financial and disclosure controls.  Through their knowledge or reckless disregard, Defendants Schoewe, Bush, Crevoiserat, Gooden, and Tatum caused improper statements by the Company.  Accordingly, Defendants

Schoewe, Bush, Crevoiserat, Gooden, and Tatum breached their fiduciary duty of loyalty and good faith because they participated in the misconduct described above.  They face a substantial likelihood of liability for these breaches, making any demand on them futile.

78.     Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take meaningful action to remedy the resultant harm.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duty
### (Derivatively Against the Director Defendants)

79.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

80.     Each of the Defendants owed and owes GM the highest obligations of loyalty, good faith, due care, and oversight.

81.     Each of the Defendants violated and breached their fiduciary duties of loyalty, good faith, candor and oversight to the Company.

82.     The Director Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  In breach of their fiduciary duties, the Director Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

83.     In addition, the Director Defendants further breached their fiduciary duties owed to GM by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact and allowing the Company to operate with inadequate internal controls which resulted in the misrepresentations and failure to disclose that millions of

GM's vehicles contained defective airbag inflators that posed a serious risk of death and injury. The Director Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact, exposing them to personal liability to the Company for breaching their fiduciary duties.

84.     The Director Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the wrongdoing set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the wrongdoing set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the wrongdoing and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

85.     As a direct and proximate result of the breaches of duty alleged herein, GM has sustained and will sustain significant damages.

86.     As a result of the misconduct alleged herein, these Defendants are liable to the Company.

87.     Plaintiff, on behalf of GM, has no adequate remedy at law.

## COUNT II
## Violation of Section 14(a) of the Exchange Act
## (Against the Director Defendants)

88.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

89.     The section 14(a) Exchange Act claims alleged herein are based solely on negligence.  They are not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants.  The section 14(a) Exchange Act claims detailed herein do not allege and do not sound in fraud.  Plaintiff specifically disclaims any allegation of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the nonfraud claims.

90.     The Director Defendants negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders which were contained in the 2022 and 2023 Proxies.  In the 2022 and 2023 Proxies, the Board solicited stockholder votes to reelect the Director Defendants to the Board.

91.     The 2022 and 2023 Proxies, however, misrepresented and failed to disclose the Board's risk oversight and the Company's inadequate internal controls, which facilitated the illegal behavior described herein.  By reasons of the conduct alleged herein, GM violated section 14(a) of the Exchange Act.  As a direct and proximate result of these defendants' wrongful conduct, GM misled and deceived its stockholders by making materially misleading statements that were essential links in stockholders following the Company's recommendation and voting to reelect the Director Defendants.

92.     Plaintiff, on behalf of GM, thereby seeks relief for damages inflicted upon the Company based upon the misleading 2022 and 2023 Proxies in connection with the improper

reelection of the Director Defendants to the Board.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands judgment as follows:

A.      Declaring that Plaintiff may maintain this derivative action on behalf of GM and that Plaintiff is a proper and adequate representative of the Company;

B.      Against all of the Defendants and in favor of GM for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

C.      Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

D.      Awarding GM restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: May 8, 2024

**LONG LAW, LLC**

*/s/ Brian D. Long*

**OF COUNSEL:**

Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: bdlong@longlawde.com

**ROWLEY LAW PLLC**

Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, New York 10606
Phone: (914) 400-1920
Email: srowley@rowleylawpllc.com
        drl@rowleylawpllc.com

*Attorneys for Plaintiff*